We'll hear our last case for today while the parties switch out. This is a 20-12538 Leaks v. United States. Mr. Upson, whenever you're ready. May it please the Court. Keith Upson for Petitioner Appellant Patrick Leaks. Pursuant to this Court's Certificate of Appealability, we're challenging both of the 300-month concurrent sentences, counts 1 and 2. The first, because the concurrent sentence doctrine does not apply. The District Court erred in applying the doctrine because these aren't concurrent sentences. Our standard is abusive discretion, correct? Yes, Your Honor. Explain that to me, why they're not concurrent sentences. So as I understand it, there's a 300-month sentence plus some supervised release for one, a 300-month sentence plus some supervised release for another. I understand that the supervised release is a little bit more for one than for the other. Is that why you're saying they're not concurrent? It's not, Your Honor. I'm saying it because in imposing sentence, the sentencing court imposed three cumulative $100 special assessments. So I know that some courts have used the special assessment as a basis for there. But as I understand the issue here, the issue is not the 924 – I'm sorry, the 922G problem. In other words, whatever we do, let's say we agree completely with you, his conviction remains. All we're talking about is the enhancement, the 924E component of the sentence, right? That's correct. Which would mean the special assessment applies no matter what. Well, and I can't argue with the reason of the court's question, nor can I hide from the fact that the first issue I've brought to the panel is not brief. It's not? Your brief, I thought, was based on the supervised release issue. It was based on the supervised release issue and the reasoning the district court – I thought I had missed it and I was going to go yell at a law clerk. Yell at me, Your Honor. And let's take the premise of your question for a moment. Again, as I understand it, all we're talking about is an enhancement here. So if we were to vacate anything, it would only be the sentence, not the conviction, and the conviction would still get a supervised release. Am I wrong on that? I don't think you're wrong, Your Honor. So I don't know how that could be, even if we indulged in this new argument, that that would be a basis. Let's talk about the thing that you did raise, which is the supervised release. It's an interesting point, which is he's looking at – I think it's maybe three years on one and five on the other or three and six on one or the other. And by having it together, at least year four, five, and six, he is now eligible to get a sentence that he might not have otherwise gotten or it would be longer. That's correct, Your Honor. Tell me why that would preclude the concurrent sentence doctrine. Under the reasoning this court applied in Randall, where it found plain error after the hypothetical situation discussed actually occurred. Randall wasn't eligible for the ACCA enhancement, but he did, upon subsequent violation of his supervised release, receive, I believe it was the five years as a Category A or as a Class A. Felony that he was no longer eligible for. And this court corrected that problem in Randall. So I understand that we would correct it. That's a direct appeal. In other words, he was given a sentence and we corrected it. But we have sort of a different question here. And the question is either embedded in – this is actually a question I have for you that I'd like answered is whether the nature of the claim is an ineffective assistance. So we're discussing Strickland prejudice or if it's a straight Johnson claim in which we're talking about Brecht prejudice. Whatever that is, the burden is on you to establish some sort of prejudice, which is very different than in the direct appeal, even plain error context. That's correct, Your Honor. And if I may look down briefly so that I can try and get the – it is an ineffective assistance ground. Okay. So then we're talking about Strickland prejudice. And so you have to show a reasonable probability of a different result through the context or the view of the concurrent sentence doctrine. And so how can we say there is a reasonable probability or, as we've termed in other cases, a significant likelihood that your client, if he violates – if he violates, a district court would find that it was a Class A violation and not a Class B or C. And if all that happened, the district court would give the maximum sentence, which is the only way it would implicate it. If all of those things happen, how could we say it's a significant likelihood? There's a lot going on in your question, Your Honor. And I can see it visually as long as I can get it now out of my mouth and all those components. Take your time. And all those pieces. The concurrent sentence is about judicial economy. And I appreciate that the likelihood and that there are other circuits cited who have used very strong language that this isn't likely at all, that perhaps Randall is his only recourse. Wait and see. When it's an actual issue, he can fix it then. In a context of the court's discretion on a judicial – an economy of resources, judicial resources, let's just fix it now. We're here. We're under the hood. Let's fix it while we're here. It's undisputed below that he wasn't eligible for the ACC enhancement. But he only – the issue only arises if your client chooses to violate supervised release. Well, and I miscited, but at least I was consistent. The district court's order in Willits, which, of course, isn't in my – isn't, of course, not at all. And I cited it as an 11th Circuit case. It's not ours. It's not. And thank goodness I at least acknowledged that I asked this court to follow the district court's reasoning that we're dealing with. And this is sort of the backside of the question. This is the – coming at the other side of the coin, Judge Luck, that you were asking about. It's whether or not there are any adverse collateral consequences that he could suffer. That's right. A significant likelihood of adverse – How does he have adverse collateral consequences? I mean, it seems since our standard is abuse of discretion, how can we say that the district court abuses discretion when whether or not your client violates supervised release is very speculative? I mean, that's an adverse collateral consequence that he has complete control over. We are, Your Honor, preemptively correcting the problem of plain error that occurred in Randall. So – and that's – and, Judge Luck, of course, you're exactly – day for day it's not going to change his life on his period of incarceration whatsoever. And I think it ultimately comes down to whether or not we fix it now while we're under the hood and it was undisputed below that he wasn't eligible for the enhancement or we take a wait and see. I think the issue is, and Judge Lugoa hit on it, where the district court has exercised its discretion here – because you're completely right. This is a discretionary doctrine. The court could have gone the other way and said we're just going to deal with it while we can. But where the district court exercises discretion and our review is simply whether there was a significant likelihood of an adverse consequence to flow from this, it's just hard for me to say that with all these ifs. So one if is the one that Judge Lugoa asked about is if he violates. But then there's some other ifs too. The if is if he violates and it's an offense that's class A that puts you at the highest end. And then if the district court then sentences way higher than the guidelines would call for because most of these the guidelines call for far lesser than the ultimate sentence. So it's a lot of speculating to get to a significant likelihood. I think that's where I'm having the most trouble. I'm sorry. No, no, please. And I appreciate the court's concern, which was why if I had realized the significance of the assessments in this court's decision in Young, to come to the court and say, no, it doesn't apply at all over $100. And that the court correctly notes could have been assessed anyway and Ray is quite possibly the shortest Supreme Court decision. It's one page. And I sure wish I had more details on what that was. Ray, not cited in the briefs, but Young. I think there are some circuits who have looked at the special assessment. I think the Ninth Circuit has looked at the special assessment as a basis for granting as an adverse consequence. And I'd be willing to indulge it. I just don't see how even if it was preserved and that was an issue, how that could be an issue here. Because unlike a lot of motions to vacate, we're not looking to vacate the conviction here. All we're talking about is vacating the enhancement. And so that doesn't really affect the special assessment given the unique nature of the charges here. Why don't we talk about the second claim, or I think we're talking about Claim 8 now, regarding the serious drug felony one and your argument regarding that. I don't know that I'm particularly at this point in having prepared for argument. I don't know that I'm eager. Would you like to rest on your briefs on that issue?  I will honestly answer any questions the panel has about it. I appreciate it, counsel. Thank you very much. If there are no other further questions at this time, then thank you. Thank you. May it please the Court, Michelle Taylor for the United States. The concurrent sentence doctrine is a discretionary doctrine, as this Court has recognized. It's a tool that district courts might use to avoid answering unnecessary issues that won't have any practical impact on the defendant's term of imprisonment. And that's the exact situation that we have here. The sentences are concurrent. I'm asking, I honestly don't know the answer to the question. Do we have jurisdiction to apply it? There are cases where the courts of appeal, for the first instance, look at that. Normally we would, right? In other words, normally this would come to us on an error on direct appeal, and it would be us deciding are we going to go through the very complicated discussion of error or just say it would be the same no matter what. That's correct, Your Honor. In fact, some of the cases that the defendant relies on are direct appeal cases where it's not cases where the court of appeals said that the district court erred or abused its discretion. It's cases where the court of appeals says we're not going to apply that doctrine here because we're not comfortable. So don't we have the same ability to do that here? In other words, we could decide just like the district court can, should we recognize this error? Is this an error worth discussing, or is it going to be the same no matter what so we don't need to get into the error? No, Your Honor. I don't think it's quite the same as this court raising the issue for the first time because here we have already the district court deciding that it's unnecessary to resolve it, and the district court really is in the best position to decide what issues matter or not to its sentence package and to consider based on its workload how it wants to devote its resources. So now on appeal, we just have the question of whether that was an abuse of discretion. We're not looking at this as if we're the first court to look at it. We're looking at whether the district court abused its discretion and its assessment that the defendant had not established . . . I mean, I guess it would be different if we were looking at this, let's see, on a direct appeal, right? And we realize that there was an error on count one and we vacated for that. At that moment in time, I guess we could send it back and say, you know, this has to be fixed. Right. In the direct appeal context or this court alternatively in direct appeal might say that this is an error that doesn't make a difference. But here, because we have a ruling and because that ruling was not an abuse of discretion, the court should affirm that discretionary ruling that preserves the district court's ability to use that tool to manage its docket and manage the necessary questions. I will tell you that I am generally uncomfortable with the concurrent sentence doctrine, in part because it's really hard to project out what the collateral consequences of a conviction are going to be. There's a million of them. And I think if we really thought about it, there are some bad things that can happen, even internally in the BOP, because you have one conviction that's on the books or one that's 30 years as opposed to 10 years, collectively being 50 years, that might qualify you for this program or that program or this facility or that facility. And so without knowing, like, the universe of what those collateral consequences are, I always feel very uncomfortable about it. How does that square with what happened here, where we just don't know all the universe of collateral consequences that could result from having a 30-year conviction as opposed to a 10-year conviction? Well, for starters, this is just a sentence enhancement. It's not a conviction. So I think the concerns about collateral consequences are heightened when it actually is a conviction that might in some way affect a future sentence enhancement or it might affect the defendant could be impeached based on it. It might have immigration consequences. But here we're just talking about a sentence enhancement. And the only adverse collateral consequence that the defendant has pointed to is this really unrealistic and theoretical possibility that he could be exposed to a higher sentence if he violates supervised release, which, as Judge Lagoa points out, is entirely within his control. And keep in mind, this is not just a technical or a minor violation of supervised release. It would have to be a very heinous one before we would get to that situation where the court might even consider stacking this. It would have to be a new law violation, essentially. And a serious one. And if you think about sort of all the ifs, as Judge Lacoa pointed out, first of all, this defendant will be released in 2038 when he is going to be 62 years old. So when he gets out at 62 years old, we have to assume that within five years of his release, while these supervised release terms are still concurrent, he violates, that the violation is so heinous that the court decides that the 51 to 63-month range under 7B1.4, which would apply to the most serious grade of violation, that that's not enough and that it needs to start stacking the replication sentences. And then it needs to say that in addition to the five-year sentence that we could apply on the Class A 924C count and the three-year sentence that we could apply on the Class B drug count, we're going to, so that already gets us to eight years. And then even assuming that the ACCA count turned into a Class C, it would still be two more years. So that gets us all the way to ten years where there's no problem at all. But the court then somehow would want to go further and assume further that if we got to this scenario, the prosecutor would already have had on the record that the ACCA count, we already conceded below that he no longer qualifies. So I think it would be extremely unlikely in the scenario that the prosecutor would ask for a sentence that would be that high. And I think it would be even more unlikely that the district court would impose it. So when we have all these ifs and this very sort of fanciful scenario, this is not the sort of adverse collateral consequence that would bar the application of this doctrine. As a practical matter, though, why not just vacate? I mean, honestly, why would the government not just go in and say, Your Honor, we concede. This only could have been, you said at the time of sentencing that you relied on the residual clause. It's clear that that was the only clause which would qualify. Just vacate it. Why not do that? So in this case, the defendant wasn't asking just for the vacation and the correction of this particular term. Sure, he was asking for everything. A full resentencing. And it certainly wasn't an abuse of discretion for the district court to say, Look, when you're asking for a full resentencing, you're arguing that my whole sentence package has been unraveled. I'm just going to say under the concurrent sentence doctrine, this makes no difference. And, you know, in this case, that was. Now, if he had come before the court and asked for correction of that particular term, and the district court had refused to grant relief, that might be a different scenario. It certainly also could have been reasonable for the district court to do that. But that doesn't mean that the choice that the district court made here is outside its discretion. The abuse of discretion standard recognizes a range of choices, and this was a reasonable one, given the fact that this won't make any difference to the defendant's ultimate term of imprisonment. What do we do with our Davis case? Because Davis seemed to suggest that the doctrine doesn't apply in this context. I'm not sure that it can or can't be read that way, and I know it's a petition for second or successive. But what do we make of that? So the Davis case, you mean the Davis case that distinguished the Williams? That's exactly what I'm talking about. Okay. Well, in that case, it looked like the ACCA enhancement and the underlying concurrent sentence were not independent. Here we know they are. The district court's already explained that they are. Even without the ACCA enhancement, the same range applies. But they're grouped together here like they were in that case. I mean, I get that the career offender sentence wouldn't have changed. That's your point. But it's all still grouped together, so they are independent and interdependent in that way. Well, and I believe the district court even explained that's not an interdependent case. Like the district court, which was in the best decision, the best position to decide what its sentencing decision was based on, it said not only is the guideline calculation just the same without the ACCA enhancement, but also it never went anywhere close to the ACCA mandatory minimum. So it's not a case where the ACCA penalty had any real impact here. The sentencing judge is the same as the 2255 judge? I think the answer is yes. I just didn't want to confirm it. I could check really quickly, Your Honor. All right. Well, I'll let you do that in a little bit. I don't want to take that away from you. But if it's not, that definitely has less sting to it. In other words, if it's not the same judge, then it's hard to say that I knew what happened at the time of sentencing, right? Yes, Your Honor. In both cases, it was Judge Whittemore. In which case, it does have some sting to it. In other words, if I'm the judge who knew, then I know exactly what I was thinking and would have done if for whatever reason this was not the 30-year but the 10-year. The court has already said the sentence would be exactly the same. It would make no difference. It would be unnecessary. So it's just basically spinning the wheels on an unnecessary issue. That's what the district court said, correct? Correct. And if this court were to hold that these sort of speculative imaginary consequences would be enough, then that would really gut the concurrent sentence doctrine, which is a necessary tool and often sometimes a useful tool to help a court manage its workload. As far as the assessment issue, because we're dealing with an enhancement and not a conviction, that's not in play. It's also not briefed, so it was waived. And in a 2255 case, the crux of a 2255 case is a challenge to the defendant's custody. 2255A talks about claiming the right to be released. So it's focused here on the term of imprisonment. And here, no relief on the ACCA sentence would do anything to affect the defendant's release date. So when we have just these hypothetical and fanciful potential adverse consequences, that's not enough to bar application of the concurrent sentence doctrine. And I also just want to emphasize for the burden, as Judge Luck pointed out, we're in a 2255. We're in a post-conviction motion. So the burden does not belong to the government here. Does Beeman decide that issue? I think Beeman establishes that in a post-conviction motion, the defendant has the burden to establish his whole case. And I think that that makes sense here. In a Johnson motion specifically. And the Duca decision from the Third Circuit likewise looked at this particular issue and says in this 2255 context, the burden is on the party seeking to show some prejudice. Is this a straight Johnson claim or is this an ineffective assistance of counsel claim? I have to tell you I'm a little confused by that based on the record. I guess you're under – but looking at the way it was briefed, I understood it as a Johnson claim, but I think he argued that it wasn't raised below because of ineffective assistance. But I think whether you're thinking about the prejudice under the ineffective assistance standard or whether you think about the prejudice as a straight up claim, in either case there's no prejudice. You think it was a Johnson claim? Yes, Your Honor. Thank you, counsel. Thank you. We'd ask the court to affirm the order of the district court. Thank you. One consistency across the circuits seems to be present in Duca. They were consecutive life sentences. And factually I think that makes a huge difference. Counsel briefed really well the distinction about this is not direct appeal. This is 2255 and the panel has asked some questions and has made some distinctions. And, of course, I wouldn't try and put words in the panel's mouth, but my sense is that had this come before the court on direct appeal, it might be better addressed at that time. And that's troubling. While I appreciate we're here on a 2255, document 16, I think, was his amended petition. I think these provisions at pages 4 and 10 were unchanged from his initial petition. I think those portions at document 1, 4 and 10, and 16, 4 and 10, both set out, I'm bringing these claims because counsel failed to raise them in the district court or on appeal. All claims brought herein are under ineffective assistance of counsel. And it seems a little tautological. While I appreciate this is not direct appeal and 2255s are different, the whole basis for his petition was had counsel brought this up on direct appeal, you'd have fixed it then, to paraphrase. So to the extent that he would now be penalized for asserting counsel was ineffective for having done on direct appeal, when it seems there's some consensus it might have been better addressed, it might have been more beneficial to him had it been addressed. And I'm not talking about waiver of the issues. So when I say things like we're under the hood now, let's go ahead and fix it while we're here, what differently could Mr. Leeks have done than what he did? He availed himself of the procedure to correct an error that hadn't been raised on direct appeal. And I've never understood, Your Honor, either why this has been such a battle that it's been. Just agree, get the re-sentence, he doesn't get everything he wanted, but this issue got fixed and then no one has to ever address any of the what-ifs. And we understand your argument, I understand your argument. The issue, at least for me, is that our standard of review is abuse of discretion, it's not de novo. So that is the issue for me. I understand, Your Honor, which is why I'm so excited that this Court in Randall said plain error, because goodness knows defendants don't see those words very much. So we can see the hypothetical, we can see the possible outcome if it's left undisturbed now. Thank you, Counsel. Thank you. I don't have a notation here, were you appointed on this case? I was, Your Honor. We really appreciate your taking this case up, Mr. Epson. Thank you so much. Thank you. Thank you to both Counsel, and we're done for the day. Thank you. Thank you.